**The UNITED STATES of America, Plaintiff,**

v.

**James JEFFERS a/k/a James Edward Davis, Defendant.**

**No. H Cr. 74-31.**

United States District Court,
N. D. Indiana,
Hammond Division.

Oct. 1, 1974.

---

John R. Wilks, U. S. Atty., Fort Wayne, Ind., for plaintiff.

John Bushemi, Merrillville, Ind., for defendant.

## MEMORANDUM AND ORDER

ALLEN SHARP, District Judge.

The defendant filed his motion to suppress on September 13, 1974. The Court held an evidentiary hearing thereon on September 20, 1974. On September 27, 1974 the defendant, by counsel, filed memorandum brief in support of the motion to suppress and on September 27, 1974, the Government filed memorandum in opposition to motion to suppress.

It is the province of the Court to weigh the evidence and determine questions of credibility in arriving at its decision.

On January 28, 1974, Sergeant Cobie Howard of the Gary, Indiana Police Department, was patroling in an unmarked squad car while in uniform. The testimony of Officer Howard was that he had taken a secretary of the police department to the Gary License Branch which was in the 1800 block of Broadway Avenue. He had parked his car and was waiting for the secretary to come back. At approximately 3:25 P.M. he observed the defendant, James Jeffers walking north on Broadway. There was also a second subject, walking with Jeffers, who was identified as Andre Kyles. Officer Howard described Jef-

fers as wearing a tan overcoat with a flattop black hat on his head. Officer Howard testified that he observed Jeffers moving close to a building at approximately 1808 Broadway. He noticed that Jeffers was making an adjustment to his shirt and trousers in the vicinity of his waist area on the right side of his body. Officer Howard stated that he was approximately 10 feet from the subject at this point in his squad car. He states that he could clearly see that defendant was trying to adjust an object which was evidently situated in his waistband. Officer Howard testified that based on his own experience, he had occasion to make a similar adjustment. He stated that at the time he made such adjustments, it was to reposition his firearm that at those times he was carrying within his waistband and not holstered.

Officer Howard further testified that the area in which Mr. Jeffers was being observed was a high crime area, and also he had observed Mr. Jeffers on numerous occasions around the methadone center and the Sugar Hill Pool Hall. These areas were considered as high crime areas in Gary. Because Officer Howard thought that Jeffers did in fact have a firearm on his person, he exited his vehicle and began to walk toward Jeffers. Officer Howard further testified that at the time he observed Jeffers making the adjustments, Jeffers' coat was not buttoned because of Jeffers' movements. As Officer Howard approached Jeffers, Jeffers (apparently not seeing Officer Howard) started to straighten up his clothes and coat, and at that point Officer Howard clearly from a distance of approximately 4 feet observed the handle of what he described as a firearm. This firearm was in exactly the same position where Officer Howard had observed Jeffers making the above-described adjustments. Howard further testified that the other individual, Andre Kyles, had moved about one-half block away from Jeffers at this time. Officer Howard further stated that Kyles had started to move away from Jeffers when Jeffers moved over toward the building and started to make the above-described adjustments. At this point Officer Howard reached and grabbed the firearm from Jeffers' waistband. Officer Howard asked Jeffers if he had a permit for the firearm. Jeffers responded that he did not and Officer Howard placed him under arrest for pistol—no permit, a violation of state law.

Andre Kyles was called by the defense as a witness. Kyles testified that he had been walking with Jeffers up until about the middle of the 1800 block on Broadway. Kyles stated that the next thing he noticed was when he turned around, Jeffers was about one-half block behind him over next to a building with Officer Howard saying something to him. Kyles further stated that he was not in a position to see what was taking place. Kyles also said that he had seen Officer Howard parked in his squad car prior to the incident.

The defense called two other witnesses, namely, the defendant, James Jeffers, and also Ollie May Barnes, a/k/a Ollie May Vinson. These two attempted to contradict the testimony of Sergeant Cobie Howard.

Barnes testified that at the time Officer Howard stopped Jeffers, she was just a matter of feet behind Jeffers. She further testified that Officer Howard had pushed Kyles aside in getting to Jeffers. She also testified that Sergeant Howard had come driving up to the corner of Broadway and immediately jumped from his car and ran over to Jeffers.

The testimony of Kyles was contrary to the assertions of Barnes and in view of the fact that Kyles was called as a defense witness could discredit Barnes. Kyles also stated that at the time he observed Officer Howard with Jeffers, he, Kyles, was approximately one block away. It is therefore inconceivable that Officer Howard could have shoved Kyles as stated by Barnes. Kyles further disputed the story of Barnes in regard to Howard jumping from his vehicle.

As to the credibility of Jeffers, the Court must first take into consideration that Jeffers is the defendant in the cause and has a vital interest in the outcome of the hearing. Secondly, it is interesting to note that at the time Jeffers talked to Ronald Holmes, Special Agent with the Bureau of Alcohol, Tobacco & Firearms, on January 29, 1974 (the day after the incident) Jeffers denied having any firearms on his person on January 28, 1974. He later, during the same interview, retracted the story and admitted that in fact he did have a firearm on his person when stopped by Officer Howard.

■ The case of Harris v. United States, 390 U.S. 234, 88 S.Ct. 992, 19 L. Ed.2d 1067, held that it has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence.

■ In the case of Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), it was held that there must be a narrowly drawn authority to permit a reasonable search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime. The officer need not be absolutely certain that the individual is armed, the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.

■ The Supreme Court held in Adams v. Williams, 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972), that a brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time. The purpose of this limited search is not to discover evidence of a crime, but to allow the officer to pursue his investigation without violence, and thus the frisk for weapons might be equally necessary and reasonable, whether or not carrying a concealed weapon violated any applicable state law. So long as the officer is entitled to make a forcible stop, and has reason to believe that the suspect is armed and dangerous, he may conduct a weapons search limited in scope to this protective purpose.

■ The first basis upon which the seizure of the firearm in the case at bar can be sustained is upon the Harris, supra, doctrine, i.e., plain view. Sergeant Howard's testimony is that he observed certain suspicious behavior from the defendant, Jeffers. He further stated that based upon his own experience and his experience as a police officer he felt that the action being taken by Jeffers indicated that he had a firearm on his person. Officer Howard further stated that the area involved was a high crime area. Officer Howard then exited his vehicle and started to approach Jeffers. Upon his approach to Jeffers, the officer testified that he was able to clearly see the handle of a firearm. This firearm was seen prior to any intrusion into the person of Jeffers. Therefore, the doctrine of plain view is applicable, and under these circumstances it has long been noted that no "search" is involved when an officer fortuitously views evidence from a position he has a lawful right to be in. See Harris, supra. Since there is no search, the discovery made by Officer Howard is not within the purview of the Fourth Amendment.

Clearly, based on these actions and the area in which Jeffers was located, a high crime area, Officer Howard was also justified in believing that the defendant may have committed a crime, and the stop-and-frisk would be justified based upon Terry, supra, and Adams, supra.

For the above reasons, the motion to suppress filed by the defendant should be and hereby is denied.